M.V. Nor Goliath Good morning, Your Honors. May it please the Court, I'm Andre Mulledy and I represent the appellants, the towing companies, in the long line of litigation out of Gulfport. Thank you for allowing us to present our case today on behalf of Central Boat Rentals, Global Towing Service, Offshore Towing, McAllister Towing, and Curtin Maritime. To begin with, I'd like to briefly address the key background facts on this case. This arises out of Epic Companies having filed bankruptcy. Epic was in the business of decommissioning, that is, disassembling and removing offshore platforms whose production had ended. The wells were sealed, and under federal law, the platforms have to be removed from the Gulf of Mexico. Epic hired and was the charterer of the Nor Goliath, which is a big derrick ship that goes and disassembles all the various components of these platforms. Epic also hired my clients, the towing companies, to bring barges to the Nor Goliath to receive the various components of the platforms that were being removed. I urge the court to consider what is an offshore platform. It's not just one item. An offshore platform, and I'm sure you've seen pictures of it, is a series of legs that go from above the water down to the floor of the Gulf of Mexico. That's called the jacket. On top of the jacket is a platform, a big work surface that supports whatever the operations are. A platform may have drilling operations, so it's got drilling equipment, or it may be a production platform, so it's got machinery and tanks and pumps. But when those operations are finished, it's time to remove the platforms, and that's what the Nor Goliath does. It goes and it takes piece by piece these platforms apart. To perform its mission, the Nor Goliath had to remove each component one at a time and place them individually on barges to receive those components. I will tell you the decks and jackets are typically bigger than the barges that receive them, and the barges are specially equipped with bracing and rigging in order to carry the key components. All of these projects are designed with details of sizes and how they're going to be placed on the barges. We're here today for the towing companies because we assert that the services that the towing companies presented to this operation were critical. They were absolutely necessary for the Nor Goliath to perform its operations. The claims are based on the Federal Commercial Instruments and Maritime Liens Act, or the Lien Act. The problem I have with that expensive rigging of the statute is that you expand the reach of the Lien, and then it becomes circular all the way down. If you don't have some restriction, if you will, the Lien is really ultimately going to be nullified. Thank you for that question, Your Honor, because I think that is an important question in this case. Let me supplement it one other way. The case called Martin Energy v. Bourbon Petrol, Judge Duncan of our court wrote this opinion. I don't know if you're familiar with that. Yes, Your Honor. The Martin Energy case is probably the most recent pronouncement from this case that is, I think, particularly relevant. I really think it is on point and supports my client's position. I will explain why. Martin Energy was a claim by Martin Energy, whose oil was sold and carried on the boats, a supply boat company. The fuel or the oil that was on those supply boats were not consumed by those boats. They carried the extra gas for other purposes. Yes, it was to go to the surveyor boats. But that points to the necessity directly at the vessel. So how do you relate that here? The court found in that particular case, Judge Higginbotham, that it was not a necessity for that supply boat to be carrying that fuel. Instead, the necessity belonged to the boats that were going to consume it. It was necessary to its business success, but it was not necessary to the operational function of the vessel. They weren't burning the gas. He was carrying it for that purpose. Right. In this particular case, the Norgoliath is the surveyor boat that the fuel was going to be delivered to. There was a lien, the court observed, likely against the receiving party that got the benefit of that delivery. In this particular case, we are delivering the product to the receiving party. The barges here are similar to the fuel that was delivered. So the receiving party, and the court says Martin Energy would likely have a lien against the receiving party, but you don't have a lien against the party that carried it. I'm going to tell you the liens against the barges that the towing company has asserted is in dispute partially on that basis. But the key elements in the Martin case are who was the lien against? It was against the vessel that received the benefit of that delivery. And in this particular case, your honors, is we provided necessaries to the receiving vessel because the Norgoliath could not perform its function, could not meet its mission unless it had the support of the barges and the towboats that not only towed barges there, they maneuvered them in the field. They brought them in for loading, took them away, brought them back to receive other loads. This is not a single lift case. The Norgoliath is repeatedly picking up the components off the deck, putting them on the barge. Then it goes and picks up the platform. Excuse me, goes and picks up the deck, puts those on the barge. The barges are taken away. Work is done. They come back to receive the jacket. So with all due respect, Judge Higginbotham, I sincerely assert that that Martin Energy case supports our position. And I want to add also that Martin Energy case had some key wording that I believe supports our case because the thrust of our argument before this court is what are necessaries. And the Fifth Circuit tells us that to decide whether a particular service or good is necessary is you look to the function and the mission of the vessel for whom the services are being rendered. Now, the Fifth Circuit tells us in Equalese, and if I can just do some quick quotes, in the Equalese case which said an insurance policy is a necessary, it said modern amnesty jurisprudence interprets necessaries broadly as anything that facilitates or enables a vessel to perform its mission or occupation. In the Gulf Marine case cited by both parties, the court stated necessaries are things that a prudent owner would provide to enable a ship to perform well its functions for which he has been engaged. The Trico Marine case which we cite, and I'm going to discuss that in a little bit more detail if time permits, tells us necessaries include most goods or services. In Ted Jockett's opinion, Equalese itself, but there's another line that follows that in his opinion. I'll just pull it up here. They said these are items useful to vessels operation and necessary to keep the ship going. Right. And, Your Honor, I will submit that the Fifth Circuit uses... Not just to do the business that they would engage in. That's a definite line that I would... But, Your Honor, I don't mean to submit that services that keep the ship navigating is a necessary, but supporting the function and the mission is also a necessary, and that's what we have here. And we cite in our brief these cases that allow liens to attach to a company that provides linens to a floating hotel, liquor to a cruise ship. These are not essential to the navigation, but they were essential to the function and the mission of those vessels. The Martin case, Your Honor, if I can bear with me, said this. The term necessaries has a broad meaning and includes most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. So it's not a narrow... Does it support navigation? It supports the overall mission of the vessel. Your Honor, there's no question that Epic, as the charterer of the North Goliath, had the authority to hire the services of the towboats in support of its overall purpose of disassembling the rigs, which was the mission of the North Goliath. Towboats are vital to the, to say the least, to the ship's mission and to delivering whatever. They're vital in so many ways, but that's the difficulty of it. If it's just vital to the overall, to a particular business enterprise in which the vessel is operating, what is the limit then? Your Honor, and you mentioned, gee, is it circular, et cetera. I would submit it's not unlimited. You have to meet the test of what is necessary. And I read these quotes of the Fifth Circuit. There is a decision of the Fifth Circuit that says when you look at the Lane Act, don't look at it as strictly juris. Or they said don't even look at it as strictly jurisemus. My Latin may be poor. But that's in the late Charles Stevedorn case. It says you have to look with a broader eye to support maritime navigation and the support of those who provide services. This is what the towing companies did here. It's not broad. You have to show that the service that you rendered, and, Your Honor, as I submit, services rendered directly to the vessel, which is what the towing companies did. We provided the service of maneuvering its barges as needed and as directed by the North Goliath. We're not some remote person in the chain. We did something here on land, and eventually it benefited it. We're in the field working at the direction of this vessel to deliver the services it needs. We don't get the directions from the barge lines. We don't get the directions from somebody's shore base. We get the directions out in the field as to when these barges need to be delivered, when they need to be moved, when they need to be moved away, other weather issues. We're there. And as I mentioned, the actions of the North Goliath isn't simply picking up one item and its job is complete. Its job is to pick up load, coordinate, bring the load back in. So in order to do that, you needed the barges for sure, and you needed the towboats to act on the instructions of the North Goliath as to what to do. We submit respectfully that this North Goliath cannot perform its work unless it has the barges and it has the towboats, which are essentially all the barges' motive power. It's an absolute, critical, essential necessity. I want to talk about the Trico Marine Operators case, which is the Fifth Circuit case, which I think is instructional here. Trico was a case with a supply boat that delivered water supplies drill pipe to an offshore platform. It was hired by the charterer of the drill rig. It was a drill rig. It was a vessel. It was hired by the charterer of that vessel, the drill rig, to bring supplies to the drilling rig operated by the drilling company. But the charterer didn't pay for these supplies that Trico's supply boat delivered to the drilling rig, and the court recognized the party that carried and delivered those essentials to the drilling rig, to the drilling vessel, had a lien against that vessel by virtue of its delivery of those essential items. I would submit that the oil fuel drill pipe were likely necessaries on their own, but the service of bringing them, the court declared, was sufficient to create a maritime lien benefit in favor of the transporting party. And I submit to you here, we are the transporting party delivered it to the receiving vessel. One additional question I want to pick you up on your argument with regard to the strictness with which we interpret the land statute itself. The Venero and Atlantic Gulf stevedores, as well as the opinion we've been talking about, the most recent opinion, the Martin Energy, all start with that basic premise itself, that these are to be strictly, strictly construed. That quote of it is that we apply the provisions of similar strictly juries to ensure that maritime liens are not lightly extended by construction, analogy, or inference. I just want to pick you up on that. To me, that still is the metric. If there's something else I should know. Your Honor, if I can respectfully address that. The strictly jurist discussion is we're not going to create new classes of liens. That's correct. But the Act speaks in terms of other necessaries. And when you look at other necessaries, that's not what strictly jurist is looking at. You can't create new categories, but the categories of necessaries exist. And if I can quote the Fifth Circuit, which says we are of the further opinion that the lien act is not to be viewed through the constricting glass of strictly jurist or, as some would suggest, strictissimi jurist. I said it wrong earlier. We view the legislative history of these sections, 1979, but that point has not been reversed. And that's why I explained, Your Honor, the case that talks about strictly jurist does not talk about expanding or not expanding the necessaries. It didn't focus on that aspect. Strictly online with applying the strict rule. Well, I would submit that the earlier case represents a congressional intent that it should be given a broad application. The Martin Energy case said look at the category broadly, which is the opposite, I think, of the point that you're suggesting that the strictly jurist comment. Martin Energy did not withdraw the broad view of necessaries. And, Your Honor, I'll submit that what we did meets the narrow view, but a broader view would certainly permit that in this case. We've got your argument. Yes, it is. Your Honor, I'll come back for the rebuttal. I appreciate the questions, Your Honor. Thank you. Good morning, Your Honors. Myles Clements of the Phelps Dunbar Law Firm appearing on behalf of Goliath Offshore and the motor vessel North Goliath. My opponent comes before you today in an attempt to expand the relevant statute similar. And he does so to allow a lien against my vessel for services not furnished directly to it. He does it without any supporting jurisprudence or statutory precedent. He does so without his clients even having a contract with my derrick ship, my heavy lift ship. He does so without having tugs which serviced my vessel and disregarding controlling Fifth Circuit President, namely the Martin Energy case and other jurisprudence. But I would submit that Martin Energy is the glove that fits this hand and that my opponent misconstrues its holding and reads it as an advocate. But I think a reasonable reading would lead one to a different conclusion and appreciate the court's different interpretation of similar. A strict jurist statute which is not to be expanded by inference, by analogy or lightly. Here we have, not as my opponent suggests, a heavy lift ship which is deconstructing a platform. That is Epic's mission. That is what Epic was hired to do. We're hired to lift components, steel components of a structure which other companies are deconstructing all at the direction of Epic. Now the Norgoliath houses many of those employees but it does not direct them and it's not out there to perform the overall task, the overall project of a platform decommission or deconstruction. It's there to heavy lift and do so at Epic's direction. And all of these vessels in this fleet chartered by Epic, you've got inland tugs, you've got offshore tugs, you've got numerous contractors. They are all working for Epic to perform Epic's project as Epic sees fit. Now these tugs, they do furnish a service but they do so to the barges which they have been hired to move around. The barges are the objects or the things to which a direct service is provided on this project by these tugs. Ergo that gives rise by these tugs against, lien rights against those barges. And the tugs have in this litigation in the court below have asserted those liens against those barges. That is their remedy. Here for whatever reasons, commercial or otherwise, they are seeking to expand similar to get a lien not against the barges who are the direct beneficiaries of their services but my client's heavy lift vessel. Could I ask a question? Yes, please. Would it make sense for us to think about this as a distinction between the vessel's functioning and the objects of the vessel's functioning in a way that a necessary enables the vessel's ability to do its basic movements like lifting. But the objects that the vessel acts upon, the items that are lifted are not necessaries. You know if it was, I'm trying to figure out if that's the way to look at it. It's not, your client is lifting but it's not what it lifts. It's the lifting function. And so if this were related directly to the lifting function, then it could, hypothetically it could be something that could have a lien. But this is the thing being lifted which is not necessary for the lifting function. I'm trying to think if that's a way to think about it. That is correct. It is what Epic, the owner of the project, wants to be lifted. The Norgoliath is out there to lift whatever. Epic wants it to lift. And it can, and those steel components it can lift, it can hold. It doesn't have to put them anywhere. It can transport them under its own motor power. It is self-propelled. Our derrick barge is self-propelled. And it doesn't have buoys. It's got a dynamic positioning system. It doesn't require tugs to move buoys around to hold it in place. All of these vessels serve Epic's purposes. And under the controlling jurisprudence, they simply don't have liens against each other. The Bibby offshore case, granted it's a district court decision, but I believe it's persuasive authority. And it's the other glob which fits this hand. And it explains that when, in that case, there was a lay barge laying pipe and there was a diving vessel, they both needed each other to get the pipe assembled and in place, without which this project couldn't go forward. They serve the interests of the owner of the project. And though there was a synergistic relationship between these tasks to perform the overall job, they were not deemed to be providing necessaries to each other. And consequently, liens against each other did not exist. Similarly here, we have that situation. The barges could not move without these tugs. And if you consider, you know, if appellant's argument becomes the law and new law, then you've got an ever-going, non-ending daisy chain of companies providing alleged necessaries to each other. Why wouldn't the tanker man at the fuel dock, who pumps fuel into a tug, which then pushes a barge out to some offshore location, why not? If he didn't get his wages, why wouldn't he have a lien against the vessel, the derrick vessel, or the ultimate vessel at the end of that chain? You would have, I would say, a circular firing squad of every contractor and subcontractor with any connection to this project shooting at each other. And the winner would be the shooter with the biggest gun. That would be my client, because we lost millions on this project. We didn't get paid, and we're defending all these liens by people who Epic stiffed as well. So, you know, ultimately we lose this case. It's a pyrrhic victory for our opponent, but I'm digressing. You get the point. If every entity, every vessel involved in a project could lien another vessel involved in the project, you'd have an ongoing daisy chain. And, look, we can all appreciate, you can read the jurisprudence, and you know the jurisprudence, liens under the General Maritime Law originated when ships pulled into ports. There was foreign ownership to continue their voyage. They might need provisions, crew, fuel, repairs. Those are the things that were specifically enumerated in the earlier iterations of the Simla statute, and without which the ship could not sail. And its owners were foreign. Credit was not reliable. And the Lien Act historically developed so that the ship could not sail on its debts. Well, now in the modern context, the basic tenets, the rationale for the lien law under the Maritime Law my opponent would have extended irrationally and unreasonably and beyond which Simla was intended to apply. Again, my opponent has overstated the role of Norgoliath. All of these contractors were working at the direction of EPIC, and they performed their discrete tasks in a synergistic fashion. Those tasks may have enabled other tasks performed, but here Norgoliath did not need a tug to perform its heavy lifts. The Martin Energy case is certainly applicable under its facts in which fuel, you would think fuel certainly is a necessary. It's in the statute. It is a necessary, but in Martin Energy, the supply vessel delivered that fuel not to the user. It delivered it directly to another vessel who delivered it to the user. It is required under General Maritime Lien Law and Simla for a lien to lie against the vessel which uses the product, and that's why I believe and I respectfully submit Martin Energy is dispositive. The Trico Marine case is mentioned by my opponent. Again, in Trico Marine, we're dealing with things, products, without which the Trico vessel, a drilling vessel, could not operate. Fuel, lube oil, drill pipe, and casing. I would say if we were dealing with heavy lift rigging, that is something that the Norgoliath requires to perform its heavy lifts. Fuel, lube oil, but that's not what we're dealing with here. The tugs didn't furnish those things to Norgoliath. Fuel, lube oil, rigging, any of that. It was a much more remote activity by the tugs vis-a-vis the Norgoliath. These cases hold that it is only those vessels to which these necessaries, these things essential to their operation, are directly provided against which a lien can arise. This is a motion for summary judgment granted in the court below. But all of these principles are a matter of law, and that law is well established, and that law was confirmed in Martin Energy Services two years ago. There is no reason for this court to expand or overturn that jurisprudential law or expand the similar statute. It's strict I-juris. Appellant has his remedy versus the barges. There's no reason for you to create new law in this case simply to have these liens reach as far as the Norgoliath and, again, create the circular firing squad. I would suggest if my opponent's going to use a rebuttal, time for a rebuttal, that he explains to us how the tugs can't execute their lien rights against the barges to whom they provided direct services. Barges have no motor power of their own. They can't get in the game. They can't be a player in this project unless a tug moves it out offshore. Here you'd have an inland tug moving a barge to the Eugene Island Seabuoy and an offshore tug taking it off, but they're both moving the barge. The court below expressly held, record excerpts, page 85, that a maritime lien attaches only to the specific vessel to which services are provided. I would like my opponent to explain what precedent is contrary to that holding. There is no precedent. The precedents favor my client, and given that authority, we would respectfully ask your honors to uphold the law that's established in this circuit and not create an endless road that would do nothing more than confuse the industry and be an impediment to maritime commerce. If there are no other questions, your honors, I'll sit down. Thank you, Counselor. Thank you. We'll address the questions that were presented. Whether my clients have liened against the barges themselves does not ignore the fact that my clients provided necessary services to the Noor Goliath. My opponent would suggest that his client is only a lift vessel, but it's not just a lift vessel. It lifts and it lands, and it goes back and lifts and it lands. And it can only do that if it has the necessary tools, and that is these barges and the motive power that bring the barges to and from. The fact that there may be a lien right against the barges that it handled does not destroy the right of my clients to bring a lien claim against the party that actually received the benefit of those services directly. This is not an expansion of the law. It's simply taking what are other necessaries, taking the holdings of this circuit as to a broad application, and we've given our references to both the Trico case, which gave the carrying party that carried the pipe to the receiving vessel a lien right. Martin Energy said the fuel that was carried, the carrying vessel didn't have it there, but the receiving vessel did, so it's the receiving of the benefit is the key to determining what's necessary. The Noor Goliath had to have the benefits of my towers in order to perform its services. We did provide the services directly to the Noor Goliath, so this is not some circular firing squad. We are focused in aiming directly at the Noor Goliath here because it is the one that got the benefit that was ordered by its charterer. My opponent suggests, gee, there's no contract between my tower and his client, but none of the cases require a contract. Indeed, in the Trico Marine case, the contract was between the charterer who chartered the drilling rig and the contract was with the supplier of the services in that case, and that created a lien even though it didn't have a contract. The lien holder didn't have a contract with the drilling rig owner. The drilling rig owner was innocent. They didn't know the money, but under the maritime law, the provider of the service had the benefit of that security, and that's what my towing companies want is the benefit of the security that the general maritime law provides. We submit that the Trico case, the Martin case, indeed support our case. They are not contrary to our position. The law is broad. We've cited the cases where cigarettes given to a shrimp boat is considered unnecessary, liquor to a pleasure yacht, linens to a floating hotel, an insurance policy that's not even delivered. It doesn't have to be in a direct receipt if you receive the benefit of something that is necessary, and that's happened here. Your Honor, the material facts are really not in dispute. It was a summary judgment, and we submit the district court erred in applying the law to the facts of the case. In summary, the North Goliath absolutely needed these services to perform its job. Your Honor, the Goliath position ignores the broad. I'm suggesting this is a fact question. No, it's not a fact question. I want to make sure. The towing companies relied on the credit of the North Goliath. They had no intention of waiving that. That's in the record. We request that this court remand this case back to the district court with instructions to reverse the order against my clients and render a judgment in favor of the towing companies because the amounts of their claims are in the lower court record. The district court was in a position to have granted this motion. We submit that the court was erroneous in its application of the law as we have presented it to the court today, that the court did not render its rulings consistent with the longstanding and consistent rulings of this court regarding what are other necessaries, not creating a new lien, Your Honor, not creating a circular fire squad or analyst succession. This was directly hands-on benefit provided to the North Goliath which could not function without my client's services. We sincerely appreciate the court's attention today and the questions that we received. I will welcome any more questions the court may have. I appreciate the Maritime Bar. I find that over the years they've come here prepared and argued their case as well. I think it's because you have such great access to us on the court. I do appreciate that. Thank you very much. We appreciate it. That will conclude the arguments for today. The court is in recess until 9 o'clock in the morning. Thank you. Thank you.